NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2702
_____

COREY MORRIS,
                    Appellant

v.

ADMINISTRATOR NEW JERSEY STATE PRISON;
ATTORNEY GENERAL OF THE STATE OF NEW JERSEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-14-cv-06023)
District Judge: Honorable Michael A. Shipp
_____

Argued: February 13, 2019

Before: HARDIMAN, SCIRICA, and COWEN, *Circuit Judges*

(Filed: April 26, 2019)

R. Damien Schorr [ARGUED]
1015 Irwin Drive
Pittsburgh, PA  15236
        *Counsel for Appellant*

Gurbir Grewal
Attorney General of New Jersey
Heather M. Hadley [ARGUED]
Senior Assistant Prosecutor
Mercer County Office of Prosecutor
209 South Broad Street
P.O. Box 8068
Trenton, NJ  08650
        *Counsel for Appellees*

_____

OPINION[*]

_____

**SCIRICA**, *Circuit Judge*

Petitioner Corey Morris appeals the District Court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Morris asserts that he received ineffective assistance of counsel in pretrial plea dealings in New Jersey state court. Particularly, he alleges his state trial counsel advised him that his aggregate sentencing exposure across several charges was 25 years' imprisonment, leading him to reject a package plea deal for 5 years' imprisonment, when in fact his actual aggregate sentence exposure was greater. He seeks an evidentiary hearing to develop that claim, which the New Jersey courts and the District Court have rejected. To merit federal habeas relief, Morris must show his counsel's performance was deficient and that deficiency prejudiced him, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984); moreover he must do so under the highly deferential standard imposed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Because Morris has not shown prejudice under AEDPA's demanding standard, we will affirm.

I.

The facts underlying Morris's petition for habeas relief involve three criminal incidents: first, the April 2002 robbery of Andrew Keresztury, for which Morris was

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

charged (*inter alia*) with Second Degree Robbery; second, the July 2002 robbery of Joseph Spivak, for which Morris was also charged (*inter alia*) with Second Degree Robbery; and finally, a burglary, for which the government later withdrew the charge.

In New Jersey, Second Degree Robbery—at issue, as noted, in both the Spivak and Keresztury robberies—calls for a sentence of 5 to 10 years. *See* N.J. Rev. Stat. § 2C:43-6(a)(2); *id.* § 2C:15-1. Burglary, as initially charged in a third indictment, calls for a prison term of 3 to 5 years. *Id.* § 2C:43-6(a)(3); *id.* § 2C:18-2. When a defendant has a history as a repeat, or "persistent," offender, he is eligible for an "extended term" of 10 to 20 years for a Second Degree crime. *Id.* §§ 2C:43-7(a)(3), 2C:44-3(a). But when a defendant faces multiple sentences, New Jersey law provides "[n]ot more than one sentence for an extended term shall be imposed." *Id.* § 2C:44-5(a)(2).

The three charges at issue were initially brought before the same New Jersey trial court, and Morris was represented by the same attorney in defending all of them. Morris's counsel submitted a pretrial memorandum to the court covering all three charges. Counsel there represented that Morris qualified for an "extended term," and that Morris's "[m]aximum sentence if convicted," "[i]ncluding extended term," was 25 years' imprisonment. *Morris v. D'Ilio*, 3:14-cv-06023, Dkt. No. 18-1, at 51 (D.N.J. Aug. 11, 2015).

The court held a status conference on the charges on March 31, 2003, at which it discussed Morris's sentence exposure and the plea arrangement the state had offered. In regard to Morris's potential sentence, the judge first stated that for the Keresztury robbery Morris faced "a maximum of ten years," for the Spivak robbery he faced additional time,

3

and for the third charge he faced five years. App'x 48–49. The judge added that if Morris was convicted, he "could face an extended term because of [his] record," *i.e.*, his history of past convictions; the judge also clarified Morris would be subject to New Jersey's No Early Release Act, under which he would not be eligible for parole until he served 85 percent of his sentence. App'x 49. The court then discussed the potential aggregate sentence Morris faced with Morris's attorney, looking to the pretrial memorandum as the basis of its discussion:

| | |
|---|---|
| THE COURT: | [Defense counsel] has written in here the maximum sentence, if convicted, is 25 years. How did you conclude the maximum is 25 years? |
| [DEFENSE COUNSEL:] | It would be two ten-year sentences running consecutive, and then a five-year sentence if you take the ordinary terms and run them max and consecutive. |
| THE COURT: | Max terms. Okay. Seems reasonable. He might have an extended term, though, on one of them. If he gets convicted of a second-degree robbery, is he eligible for an extended term? |
| [PROSECUTOR]: | I believe so, yes, your Honor. |
| THE COURT: | Well, if he is, then it could be more than 25 years. |

App'x 50. The court then addressed the plea deal the state had offered Morris. It confirmed the plea was "five years at 85 percent" with credit for time served, and was a "package offer" for all three indictments. App'x 51. It then explained: "[Y]ou're looking at running a risk of 25 years if you're convicted of several of these offenses with 17-year minimum parole ineligibility as opposed to four years with 51 months" under the plea. App'x 51. With that explanation, the court asked: "So you want to go to trial?" App'x 51. Morris responded "Yes." App'x 52.

Morris first stood trial in October 2003 for the Spivak robbery. A jury found

4

Morris guilty, and on December 5, 2003 he was sentenced to an extended term of 16 years. Morris then stood trial for the Keresztury robbery in March 2004. After a jury found him guilty, he was sentenced in July 2004 to an extended term of 20 years, to be served consecutively to the Spivak robbery term. At some point after the status conference, the state withdrew the third indictment. Morris directly appealed his convictions and sentences; ultimately, the appellate process yielded no changes to his 36 year combined sentence.

Morris next challenged his sentence through New Jersey's post-conviction relief process. He raised several challenges, including one that his counsel was ineffective in failing to accurately advise him of his sentencing exposure if he went to trial. Morris also challenged the imposition of two extended term sentences as a violation of New Jersey law, N.J. Rev. Stat. § 2C:44-5(a)(2), which provides "[n]ot more than one sentence for an extended term shall be imposed" when a defendant faces multiple sentences. *See also id.* § 2C:44-5(b)(1); *State v. Pennington*, 14 A.3d 790 (N.J. Super. Ct. App. Div. 2011). Morris's sentence for the Keresztury robbery was accordingly reduced in 2011 from 20 years to 10 years. *See State v. Morris*, Nos. A-5057-10T3 & A-1705-11T2, 2014 WL 503941, at *6–7 (N.J. Super. Ct. App. Div. Feb. 4, 2014). The post-conviction relief and appellate courts dismissed as meritless nearly all of Morris's other challenges, including those concerning ineffective assistance of counsel. *See generally id.*

Morris filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court on September 16, 2014, contending (*inter alia*) he received ineffective assistance of counsel in his plea dealings before trial. The court considered

Morris's challenges and endorsed the state courts' findings and conclusions, including that: Morris was accurately informed of his sentencing exposure; he would not have accepted any plea arrangement whether or not he was accurately informed; and he could not have accepted a plea arrangement because he maintained his innocence. *See Morris v. D'Ilio*, No. 14-6023, 2017 WL 3081670, at \*4–5 (D.N.J. July 19, 2017). It denied Morris's petition and rejected his request for a certificate of appealability.

Morris sought a certificate of appealability from this court, which we issued for three of Morris's claims: "Morris' claim that trial counsel failed to advise him regarding (1) the aggregate maximum sentence to which he was subject for both of his robbery convictions, (2) the maximum sentence, including the extended term, to which he was subject for the robbery at issue in this case, and (3) the consecutive parole supervision terms to which he was subject." Order, Third Circuit Dkt. (Jan. 23, 2018). We have appellate jurisdiction to review those claims under 28 U.S.C. § 2253 and § 1291.

II.

Because the District Court did not conduct an evidentiary hearing in ruling on Morris's petition, "our review of its legal conclusions is plenary," and we review the state court record from the same position as the District Court. *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). That review is governed by AEDPA, which mandates deference to state court conclusions and findings. *See generally Harrington v. Richter*, 562 U.S. 86 (2011); *Lewis*, 581 F.3d at 109–12. Under AEDPA,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

6

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Accordingly, AEDPA calls for significant deference to state court decisionmaking. To establish that a state court's decision was contrary to or involved an unreasonable application of Supreme Court law, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. And in reviewing claims that allege state court decisions were based on unreasonable factual findings, we recognize "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Eley v. Erickson*, 712 F.3d 837, 846 n.11 (3d Cir. 2013); *Lewis*, 581 F.3d at 100, 111.

III.

Morris's petition for habeas relief turns on the claim that he received ineffective assistance of counsel in his plea dealings. The Supreme Court has recognized the right to counsel "extends to the plea-bargaining process," and habeas relief may be warranted "where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012). The

7

question whether counsel's assistance was ineffective is governed by the familiar *Strickland* framework: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. We apply that framework with AEDPA's deferential requirements in mind. *See Burt v. Titlow*, 571 U.S. 12, 15, 19–20 (2013).

Morris primarily asserts that his counsel's allegedly erroneous advice concerning his aggregate sentencing exposure violated his right to effective counsel, and the District Court erred by failing to hold an evidentiary hearing on that question. We first address that claim, then turn to Morris's additional allegations of ineffective assistance.

## A.

In evaluating Morris's primary ineffective assistance claim, we begin with the question whether Morris's counsel was deficient. Morris asserts that his counsel warned him he faced an aggregate maximum sentence of 25 years when in fact his sentencing exposure was notably greater. The New Jersey post-conviction court disagreed, stating in full: "I find trial counsel was not deficient for writing his potential sentence on the pretrial sentence form because defendant was orally instructed regarding the potential of extended term." App'x 80.

Failure to properly advise a defendant about sentencing exposure in plea dealings may constitute ineffective assistance of counsel: "When addressing a guilty plea, counsel is required to give a defendant enough information 'to make a reasonably informed

8

decision whether to accept a plea offer.'" *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013), and *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)); *see also Lafler*, 566 U.S. at 162–63. A defendant who rejects a guilty plea and receives a more severe sentence after trial makes a claim of ineffective assistance when "he alleges that the advice he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer." *Day*, 969 F.2d at 43. Accurate information about maximum sentence exposure "will often be crucial to the decision whether to plead guilty," the *Day* court explained, because it enables a defendant to conduct "comparative" analysis essential to the decision whether to take the plea. *Id.* Indeed in *Day* itself, we held "if Day is correct that he was seriously misled about his sentence exposure"—there receiving advice he faced roughly 11 and a half years in prison when he was ultimately sentenced to nearly 22 years—and "the likelihood of his conviction was overwhelming, he received ineffective assistance of counsel." *Id.* at 44.

The record supports Morris's contention that he received similarly erroneous advice from counsel. First, counsel represented Morris was only facing an aggregate term of 25 years in a pretrial memorandum submitted to the court before Morris rejected the 5 year plea deal. In response to the question "Does the defendant qualify for an extended term?" counsel circled "yes." D. Ct. Dkt. 18-1, at 51. On the same page of the memorandum, only a few lines down, in response to the prompt "Maximum sentence if convicted. (Including extended term, if applicable)," counsel wrote 25 years. *Id.* Second, at the March 2003 status conference where Morris rejected his plea deal, the court

9

reviewed counsel's representations in the memorandum; counsel stated again that Morris was subject to a 25 year maximum aggregate term. *See* App'x 50.

Despite that advice, Morris was in fact exposed to a maximum aggregate sentence of at least 35 years. For one of the two second-degree robbery charges he faced, he was exposed to an extended term of 20 years. For his second second-degree robbery charge he faced a maximum of 10 years, as New Jersey Revised Statute § 2C:44-5 makes clear that Morris's extended term exposure was only for one of his Second Degree charges, not both. And for crimes charged in the third indictment, he faced 5 years. Morris is in fact now serving an aggregate term of 26 years—one year greater than the maximum exposure his counsel warned him of.[1] There is no record evidence that counsel ever corrected his error, and the state does not contend counsel ever did so.

We need not, however, determine whether the state court's finding on deficiency was "incorrect by clear and convincing evidence," *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003): Were Morris's counsel deficient, Morris would still need to show that deficiency was prejudicial to prevail. Morris has not done so under AEDPA's standard.

To establish prejudice in the context of ineffective plea advice, the Supreme Court

---

[1] Morris was initially sentenced to 36 years total for the Spivak and Keresztury robberies, with a 16 year extended term sentence for the former and a 20 year extended term sentence for the latter. (As noted, the indictment for the third charge was withdrawn at some point after the March 2003 status conference.) Morris successfully challenged the imposition of the second extended term sentence as a violation of New Jersey Revised Statute § 2C:44-5, which provides "[n]ot more than one sentence for an extended term shall be imposed." *Id.* § 2C:44-5(a)(2); *see also id.* § 2C:44-5(b)(1). The New Jersey post-conviction court "determined that the extended term imposed" for the Keresztury robbery "was an illegal sentence" and vacated that extended term. 2014 WL 503941, at *5–6. On November 4, 2011, the court imposed a corrected 10 year term of imprisonment for the Keresztury robbery. *See id.* at *6.

has explained:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164. We have before found prejudice was possible in circumstances similar to Morris's, noting "we do not find it at all implausible that a young man would think twice before risking over 3800 extra days in jail [*i.e.*, nearly 10.5 years] just to gain the chance of acquittal of a crime that he knew he had committed." *Day*, 969 F.2d at 45. In those circumstances, we concluded an evidentiary hearing was warranted to further probe prejudice. *Id.*

But as noted, we review for prejudice in light of AEDPA's deference to state court findings and conclusions. The New Jersey post-conviction court here found Morris was not prejudiced. Among other grounds, it reasoned that correct "information would not have altered [Morris's] decision to proceed to trial. The record reflects his conscious decision to proceed to trial." App'x 79. The court noted that in a January 2003 conference concerning Morris's indictment in the Spivak robbery, it warned him he might face an extended term sentence in that case. Morris nonetheless proceeded to trial. *See* App'x 79; App'x 33. The court reasoned that Morris's conduct during the March 2003 pretrial status conference "demonstrates that defendant's decision to reject the plea bargain would not have been altered by attorney advice." App'x 80. It also noted that the judge at that point mitigated counsel's potential error when he "warned the defendant he could face an

11

extended term if convicted," App'x 80, stating that Morris's term "could be more than 25 years," App'x 50. Knowing he could face "more than 25 years" in prison, Morris rejected a 5 year package plea deal and proceeded to trial.

The court's "factual determination that" Morris would have proceeded to trial regardless of his counsel's error is "entitled to a presumption of correctness," and "the burden" is on Morris "to rebut this presumption with clear and convincing evidence." *Lewis*, 581 F.3d at 111. Morris does not point to any specific record evidence to rebut the presumption, instead generally relying on the logic of *Day* to suggest the difference between the sentence exposure he was apprised of and that he actually faced was sufficient to warrant an evidentiary hearing. But that cannot overcome the New Jersey court's contrary finding—a finding, as we have noted, that is entitled to a presumption of correctness. Morris accordingly has not shown by clear and convincing evidence that the court's finding he was not prejudiced is incorrect.[2]

B.

Morris's Certificate of Appealability extends to two other claims of ineffective assistance in plea bargaining, but Morris cannot prevail on either. First, Morris contends his counsel was ineffective in failing to inform him of the maximum sentence he faced, with an extended term, for the Keresztury robbery. But Morris's sentence for that robbery

---

[2] Insofar as Morris suggests the state court unreasonably applied the law in failing to offer him an evidentiary hearing in its own post-conviction proceedings, he also cannot meet AEDPA's high bar. Morris does not point to any Supreme Court law that clearly requires a post-conviction court to hold an evidentiary hearing, particularly on its own initiative; he accordingly cannot show the court's decision to rely on record evidence rather than hold a hearing was an unreasonable application of Supreme Court law. *See Harrington*, 562 U.S. at 102–03.

was reduced in state post-conviction proceedings to 10 years in light of N.J. Stat. § 2C:44-5 and *Pennington*, which legally bar the imposition of extended terms for multiple sentences. Morris does not dispute that he was apprised he could face a 10 year term of imprisonment for that sentence. Because Morris correctly understood this charge could yield a 10 year sentence at the time he rejected the plea, he cannot show any potential error was prejudicial. Second, Morris contends his counsel was ineffective in failing to warn him that he faced consecutive parole supervision terms. But again, Morris cannot show any potential error on this front was prejudicial. The trial court warned Morris that he faced a mandatory term of parole. *See* App'x 49, 50. Moreover, the state court's reasoning that Morris was not reasonably likely to have accepted the plea deal had he known he was exposed to several additional years of parole is persuasive and entitled to deference under AEDPA. *See* App'x 84. Accordingly, Morris has not shown an evidentiary hearing was warranted to develop either of these claims.

## IV.

For those reasons, we will affirm the District Court's denial of habeas relief.

13